### STATE of Missouri, Respondent,

v.

### Clifford KEMP, Jr., Appellant.

### No. WD 51280.

Missouri Court of Appeals,
Western District.

April 2, 1996.

---

Toni Meyer, Asst. Public Defender and W. Michael Hamilton, Dist. Public Defender, Fulton, for appellant.

Robert R. Sterner, Pros. Atty., Mark Tracy, Asst. Pros. Atty., Callaway County, Fulton, for respondent.

Before HANNA, P.J., and SMART and ELLIS, JJ.

ELLIS, Judge.

Clifford Kemp appeals his conviction for assault in the third degree, § 565.070.1(5).[1] He was tried by the court, sitting without a jury, and found guilty on May 19, 1995, of assaulting his wife with a belt. Kemp was sentenced to 15 days imprisonment in the Callaway County Jail; however, execution of his sentence was suspended, and he was placed on two years supervised probation.

On appeal, Kemp alleges the trial court erred in admitting the testimony of two Sheriff's deputies regarding statements made by Mrs. Kemp at the scene because her statements were inadmissible hearsay. Kemp further alleges that without Mrs. Kemp's statements, the state's evidence was insufficient to support a finding of guilt beyond a reasonable doubt.

The incident in question allegedly occurred on February 15, 1995, at the Kemp residence in the Red Maple Trailer Park in Callaway County. An unknown person placed a call to the Callaway County Sheriff's Department and Deputy Rick Seigel and Sergeant Larry Dye were dispatched to the scene.

When Sergeant Dye and Deputy Seigel approached the Kemp residence, Mrs. Kemp was across the street from her home, pacing back and forth between the sidewalk and the edge of the street. Mr. Kemp was standing

1. All statutory references are to RSMo 1994.

in the yard or near his car in the driveway in front of their home, approximately twenty-five feet from his wife. As they arrived, Mrs. Kemp started toward the deputy's car, reversed her direction to walk away, and *then turned and walked back toward the car.* She did this twice. Sergeant Dye and Deputy Seigel both testified Mrs. Kemp appeared to be crying and very upset. Sergeant Dye testified Mrs. Kemp was "hugging herself," with her arms "crossed in a guarded position." In addition, she appeared excited or distressed.

Sergeant Dye approached Mrs. Kemp and inquired as to what was happening. Her response, which is the statement at issue, was that her husband had been beating her with a belt. Sergeant Dye also testified that Mrs. Kemp responded in a moderately loud, stressed voice. Deputy Seigel, who overheard Mrs. Kemp's conversation with Sergeant Dye, described her voice as "crackly" and "unusually loud." Sergeant Dye also testified, "[Mrs. Kemp] was anxious. She did not want to come back across the street."

Kemp contends the trial court erred in admitting the statements his wife made to the Sheriff's deputies because the statements were hearsay. The state argued at trial and on this appeal that Mrs. Kemp's statements were admissible under the excited utterance exception to the hearsay rule.

■ The excited utterance exception applies when "(1) a startling event or condition occurs; (2) a statement is made while the declarant is under the stress of excitement caused by the event and has not had an opportunity to fabricate; and (3) the statement relates to the startling event." *State v. Post,* 901 S.W.2d 231, 234 (Mo.App.1995). This exception is based on the human "experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and dur-

ing the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts."

*Id. (quoting Walsh v. Table Rock Asphalt Constr. Co.,* 522 S.W.2d 116, 120 (Mo.App. 1975)) (quoting VI John Henry Wigmore, Wigmore on Evidence § 1747(I), at 135 (3rd ed.)).

■ An out-of-court statement offered to prove the truth of the facts contained in the statement is hearsay. An alleged "excited utterance" is viewed by Missouri courts as presumably inadmissible because it is hearsay. *Post,* 901 S.W.2d at 234. The party offering the statement as an exception to the rule against hearsay has the burden of making a sufficient showing of spontaneity to render the statement admissible. *Id.* Moreover, "[t]he utterance must be made under the immediate and uncontrolled dominion of the senses and during the time when consideration of self-interest could not have been brought to bear through reflection or premeditation." *Id.*

Mr. Kemp contends the state failed to prove the first element necessary to establish an excited utterance—the occurrence of a startling event. He points out that the record is wholly devoid of independent evidence that a startling event (the alleged assault) occurred. The only evidence of the alleged event is the purported excited utterance itself.

■ "There is a considerable logical difficulty in allowing into evidence a statement admissible only because it arises from a startling event as proof also that the startling event occurred." *Post,* 901 S.W.2d at 234. In *Post,* the court held that an alleged excited utterance itself is insufficient to establish that a startling event occurred. Rather, the court concluded that *"some* independent proof that the event could have occurred is necessary." *Id.* at 235.

In reaching this conclusion, the *Post* court relied on *Truck Insurance Exchange v. Michling,* 364 S.W.2d 172 (Tex.1963), where the Texas Supreme Court determined that an injured man's statements were not admissible through the testimony of his wife under the excited utterance exception to the hearsay rule. In *Truck Insurance Exchange,* the court was faced with the same circumstances as the case at bar; the only evidence of the event was the hearsay statement. *Id.* at 174. Describing the process as "bootstrapping," the court stated:

> A hearsay statement, as res gestae, is admitted as an exception to the hearsay rule because it is made under circumstances which raise a reasonable presumption that it is the spontaneous utterance of thought created by or springing out of the occurrence itself and, so to speak, becomes a part of the occurrence. But in this case the only evidence of the occurrence is the hearsay statement. Thus the Court of Civil Appeals is conceding credit to a narrative to prove the very circumstances from which it is said to derive its credit. Its trustworthiness, as to the happening of an accident, is presumed from the influence of the accident which its trustworthiness is taken to prove.

*Truck Ins. Exch.,* 364 S.W.2d at 174. " * * * It is proceeding in a circle to use the declarations as proof of facts necessary to constitute declarations part of the res gestae." *Id.* at 175 (*quoting* 32 C.J.S. Evidence § 405). Therefore, the Texas Supreme Court concluded, for statements to be admitted into evidence under the excited utterance exception to the hearsay rule, there must be at least some evidence of the basic event, independent of the declaration that accompanies it. *Id.* at 175–76.

▮ *Post* was a case in which the victim drowned in a bathtub, and her husband was charged with murder. He was convicted and on appeal claimed that testimony from two witnesses regarding a telephone conversation with the victim in which she said her husband had or was beating her was inadmissible hearsay. The State contended the testimony was admissible under the excited utterance exception to the hearsay rule. The Eastern District of this court held the testimony was inadmissible because there was no independent evidence of the startling event, i.e., the alleged beating. In doing so, the court noted that "[r]eflective thought is the antithesis of the excited utterance, which requires as its root, spontaneity." *Post,* 901 S.W.2d at 235. The court pointed out that neither witness heard anything while on the telephone that suggested a beating was in progress, nor could they tell when the alleged beating occurred. Moreover, there was no evidence on the victim of physical abuse after the incident. Under these circumstances, the court found that the state "failed to carry its burden of overcoming the presumption of inadmissibility...." *Id.* In the case at bar, there is likewise no independent evidence of the startling event, i.e., the alleged beating. The record reveals Sergeant Dye and Deputy Seigel responded to a call to the Sheriff's Department directing them to the Kemp residence. It does not show who made the call, the nature of the call, or who or what was the object of the call. When they arrived, they did not observe any altercation taking place between Mr. Kemp and Mrs. Kemp. In fact, the two individuals were separated by a distance of approximately twenty-five feet. The record does not contain any testimony about the circumstances surrounding the alleged beating or, just as important, when it occurred. Moreover, there is no evidence whatsoever that Mrs. Kemp showed signs of physical abuse. Although circumstances can, on occasion, provide some independent evidence of an event, in the case at bar, the fact that Mrs. Kemp seemed upset and appeared to be crying is not evidence that a beating had taken place. It is just as likely that her appearance and actions resulted from an argument, the utterance of unkind words, or any number of circumstances or causes other than a physical assault. Thus, as in *Post,* the state failed to carry its burden of overcoming the presumption of inadmissibility, and the court erred in admitting the evidence.

In light of our conclusion that the testimony by Deputy Seigel and Sergeant Dye regarding Mrs. Kemp's statements that her husband had beaten her with a belt was

inadmissible, the state is left without any evidence, whatsoever, that Mr. Kemp assaulted his wife with a belt. As such, his conviction must necessarily be reversed.

The judgment of the trial court is reversed, and Kemp is ordered discharged.

All concur.