

# In the Missouri Court of Appeals
# Eastern District

DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED102148 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | |
| | ) | |
| ANTONIO BURNS, | ) | Honorable John J. Riley |
| | ) | |
| Defendant/Appellant. | ) | Filed: December 15, 2015 |

## Introduction

Antonio Burns (Appellant) appeals from the judgment and sentence entered by the trial court after a bench trial finding him guilty of second-degree domestic assault, third-degree domestic assault, and felony resisting arrest. We affirm in part and reverse and remand in part.

## Factual and Procedural Background

Appellant and S.B. were married and lived together. On November 14, 2013, S.B. was at home with the children when Appellant arrived home drunk with his cousin. Because the children had burned some cheese on the stove, Appellant became angry, called S.B. a horrible parent and slapped her across the face. Appellant grabbed her and slammed her against the wall, then began to choke her. Appellant threw her to the ground. Appellant grabbed S.B.'s hair and wig, which was glued to her scalp and hair, and ripped it off. Appellant forced S.B., who was naked, out of the house and locked her out. About three minutes later, Appellant let her back in,

when she hurriedly dressed, grabbed her backpack and left the house. Appellant followed her and grabbed her backpack. S.B. let the backpack go and fled toward a police vehicle she saw nearby.

In between sobs, S.B. told Detective Ryan Barone what had just happened. Her narrative took about five minutes, because she had to stop and compose herself several times. Detective Barone and Officer Lawrence Kreisman then went to the home of Appellant and S.B., which was about one-half to three-quarters of a block away. As they approached the house, the officers heard Appellant and his cousin arguing. Detective Barone ordered Appellant, who was walking into the gangway, out to the street and told him he was under arrest. Appellant fled. Detective Barone and Officer Kreisman pursued Appellant on foot. Appellant was apprehended for second-degree domestic assault and read his *Miranda*[1] rights.

The State charged Appellant with second-degree domestic assault for choking S.B. (Count I), third-degree domestic assault for pulling and ripping out her hair (Count II), and felony resisting arrest (Count III). Appellant's counsel filed pretrial motions to exclude S.B.'s initial statement to police as hearsay and to dismiss either Count I or Count II because both counts together violated Appellant's right to be free from double jeopardy, in that the two counts constituted one assault. The trial court took the motions under submission with the case.

Appellant waived a jury trial. A bench trial was held on August 13, 2014, at which Appellant testified but S.B. did not. Detective Barone testified as to what S.B. told him about the assault immediately after it had occurred on November 14, 2013. On September 3, 2014, the trial court issued its Judgment, along with a Memorandum and Findings, denying the pretrial motions and finding Appellant guilty of all charges. The trial court noted it found Appellant's testimony not credible. On October 3, 2014, the trial court orally pronounced sentence, sentencing Appellant to five years' imprisonment on Count I, execution of sentence suspended

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

and a three-year probationary period imposed; sixty days on Count II, which was discharged for time served; and as to Count III, the court declared "the imposition of sentence be suspended, and that the [Appellant] be placed on probation for a period of three years." The court's written sentence was consistent with its oral pronouncement of sentence in every regard except for Count III, which will be addressed in greater detail in Point III. This appeal follows.

Points on Appeal

In his first point, Appellant maintains the trial court erred in overruling his motion to dismiss Count I of second-degree domestic assault for choking S.B. or Count II of third-degree domestic assault for pulling S.B.'s hair because conviction of both counts violated his constitutional right to be free from double jeopardy, in that both counts resulted from one continuing, uninterrupted course of conduct, a single assault, and there was no evidence of separation of time sufficient to provide Appellant an opportunity to reconsider his actions or reform his intent.

In his second point, Appellant claims the trial court erred and abused its discretion in permitting Detective Barone to testify about what S.B. told him out of court about the assaults because such statements constituted hearsay, admission of which violated Appellant's right to confrontation.

In his third point, Appellant contends the trial court plainly erred in entering a four-year sentence for Count III of the class D felony of resisting arrest on the written judgment and sentence because the written judgment and sentence materially differed from the trial court's oral pronouncement on Count III of the suspended imposition of sentence and three years of probation. Appellant maintains this Court must remand for correction of the trial court's clerical error *nunc pro tunc*.

3

Standards of Review

Whether a defendant is afforded the protections of the Double Jeopardy Clause is a question of law, which we review *de novo*. State v. M.L.S., 275 S.W.3d 293, 296 (Mo.App. W.D. 2008).

This Court reviews a trial court's admission of evidence for abuse of discretion, and will not reverse the trial court's judgment absent prejudice resulting from that admission. State v. Kelly, 367 S.W.3d 629, 630 (Mo.App. E.D. 2012).

Discussion

Point I – Double Jeopardy

The Double Jeopardy Clause prevents a criminal defendant from being subjected to multiple punishments for the same offense. M.L.S., 275 S.W.3d at 296. Section 556.041[2] states:

> When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if
> ....
> (4) The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

In the present case, Count I, felony second-degree domestic assault, alleged Appellant attempted to cause physical injury to S.B. by choking her. Count II, misdemeanor third-degree domestic assault, alleged Appellant attempted to cause physical injury to S.B. by pulling her hair. Appellant argues his domestic assault convictions violate the Double Jeopardy Clause because the factual basis for the separate charges was a single continuous and uninterrupted assault. Additionally, he argues the record contains no evidence of a separation in time sufficient to provide him an opportunity to formulate a new intent.

---

[2] All statutory references are to RSMo 2012.

4

Although the choking and hair pulling occurred within minutes of each other, one incident involving multiple injuries to the victim can result in multiple charges as long as separate acts are involved or a separate *mens rea* was formed as to each act. State v. Childs, 684 S.W.2d 508, 511 (Mo.App. E.D. 1984). Here, when Appellant came into the house and realized the cheese had burned, he became enraged and told S.B. she was a terrible parent, shoved her against a wall and choked her, then released his hands from her throat and threw her to the ground, knocking over one of the children. At this point a break in the action occurred – an interruption. Appellant then attacked S.B. for a second time by grabbing her by her hair and ripping off a wig attached with glue to her scalp, and threw her outside the house, naked. After several minutes he allowed her back in and they argued further. She dressed and grabbed a backpack, preparing to leave. S.B. was able to leave the house but Appellant pursued her and grabbed her backpack from her. S.B. was able to escape and run to police.

Based on these facts, we find the choking and the hair pulling were separate acts of domestic assault because not only was there a break in the action, but also Appellant had time to reconsider his actions in between the two acts. Appellant choked S.B., an act which constituted felony second-degree domestic assault. This assault was concluded when he released his grip on her throat and threw her to the ground. His release and shoving of her knocked over one of the children and constituted an interruption in his course of conduct. At this point Appellant's hands were off her neck and he had shoved her away from himself. Appellant had an opportunity to reconsider his actions and decided to attack S.B. again, constituting a new *mens rea*. This time Appellant grabbed S.B. by her hair, a new and different act of violence on her person, ripping her wig from her scalp, resulting in a charge of misdemeanor third-degree domestic assault. We find, as did the trial court, these were distinct acts involving different conduct and attempts to

5

injure in distinct ways such that each required a separate *mens rea*. "The fact that these incidents took place almost at the same time in the same place is not dispositive because the two distinct acts required two distinct *mens rea*." M.L.S., 275 S.W.3d at 298. Although occurring close in time, these were separate and distinct acts and charging them as separate acts of domestic assault of different degrees did not violate Appellant's double jeopardy rights. Point I is denied.

Point II – Hearsay

S.B. did not testify at trial. Over Appellant's objection, the trial court allowed Detective Barone to testify as to what S.B. told him about the assaults when he responded to the scene three minutes after receiving the call. Detective Barone testified S.B. was sobbing uncontrollably when he arrived at the scene. He stated she would compose herself and say what happened, and then begin sobbing uncontrollably again. He testified she told him what had occurred in narrative form without any questions or prompting from him, other than to ask Appellant's name and birthdate. S.B. was extremely upset and shaken from the events, which had just occurred. Detective Barone listened to her account, but did not record anything.

The excited utterance exception applies when (1) a startling event or condition occurs, (2) a statement is made while the declarant is under the stress of excitement caused by the event and has not had an opportunity to fabricate, and (3) the statement relates to the startling event. State v. Post, 901 S.W.2d 231, 234 (Mo.App. E.D. 1995). The essential test for admissibility of a spontaneous statement or excited utterance is neither the time nor place of its utterance but whether it was made under such circumstances as to indicate it is trustworthy. State v. Kemp, 212 S.W.3d 135, 146 (Mo.banc 2007). This exception is premised on the idea that where the statement is made under the immediate and uncontrolled domination of the senses as a result of

6

the shock produced by the event, the utterance may be taken as expressing the true belief of the declarant.  Id.

> This exception is based on the human "experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock.  Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts.

Post, 901 S.W.2d at 234, quoting Walsh v. Table Rock Asphalt Constr. Co., 522 S.W.2d 116, 120 (Mo.App.1975) (quoting VI John Henry Wigmore, Wigmore on Evidence § 1747(I), at 135 (3rd ed.)).

Here, S.B.'s statement to Detective Barone, although made out of court and offered to prove the truth of the matters stated, was admissible under the excited utterance exception, as found by the trial court.  S.B. was clearly still under the influence of the stress and shock of the assaults perpetrated upon her by Appellant, which had just occurred.  S.B. was extremely upset, sobbing uncontrollably, and relayed only the events that happened minutes before, causing her distress.  Her statement was admissible as an excited utterance because it was "made under the immediate and uncontrolled domination of the senses as a result of the shock produced by the event."  State v. Riley, 440 S.W.3d 561, 566 (Mo.App.  E.D. 2014).

Immediately prior to Appellant's assaults on her, S.B. was at home with her children. Appellant arrived home with his cousin, drunk, screamed insults at her, choked her, and threw her against a wall knocking over one of her children.  Then Appellant pulled her hair, ripping her wig from her scalp.  Appellant forced S.B., who was naked, out of the house and locked her out

7

for several minutes. After he let her back in, she was able to dress, grab her backpack and escape, fleeing to police, while Appellant still gave chase, grabbing her backpack. Minutes later and a half-block away, sobbing uncontrollably, she gave her account of what had just occurred. Her account of the events is trustworthy because it was made under the immediate and uncontrolled domination of her senses as a result of shock produced by Appellant's actions.

Accordingly, S.B.'s statement was spontaneous, caused by a startling event, and admissible under the excited utterance exception to the hearsay rule.

Appellant also complains he was deprived of his right to confront S.B. about her statement because she did not testify at trial. The Confrontation Clause, U.S. Const. amend. VI, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The Confrontation Clause prohibits the admission of testimonial statements of a witness who did not appear at trial unless the witness was unavailable to testify, and the defendant had a prior opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 53-54 (2004); Kemp, 212 S.W.3d at 147. The testimonial nature of a statement is what makes the declarant a 'witness' that the accused has the right to confront. Crawford, 541 U.S. at 51; Kemp, 212 S.W.3d at 147-48.

Thus, the relevant question at hand is whether S.B.'s statement was testimonial or nontestimonial in nature. We find that it was nontestimonial.

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Davis v. Washington, 547 U.S. 813, 822 (2006); Kemp, 212 S.W.3d at 148.

The statement at issue in this case was nontestimonial because it was clearly made under circumstances objectively indicating that the primary purpose of it was to enable police assistance to meet an ongoing emergency. S.B. ran down the street from the scene of the assaults directly to a police vehicle she saw. Detective Barone was called to the scene by the officer present to assist S.B. Detective Barone arrived within three minutes of receiving the call and found S.B. sobbing uncontrollably and listened to her recounting the violence that had just been perpetrated on her by Appellant. Detective Barone did not record her statement, nor did he prompt or question S.B. while she narrated the events that had just occurred, other than asking Appellant's identity and for minor clarifications. This statement was nontestimonial and thus its admission did not violate Appellant's right to confront S.B. about it.

Later, S.B. went to the police station to give a formal written statement as to what had transpired. This second, written statement was not presented, used or admitted at trial. This statement would be considered testimonial, but is not at issue here because it was not admitted at trial.

For the foregoing reasons, Detective Barone's testimony recounting S.B.'s statement to him was admissible as an excited utterance exception to the hearsay rule and its admission did not violate Appellant's right to confrontation because it was nontestimonial in nature. Point II is denied.

Point III – Inconsistency in Sentence

Appellant claims the trial court's written sentence was erroneous because it conflicts with the court's oral pronouncement of his sentence. The State concedes this error.

At sentencing, the trial court stated that "As to Count III, it's the Order and Judgment of the Court that the imposition of Sentence be suspended, and that [Appellant] be placed on

9

probation for a period of three years." However, the written sentence and judgment indicates the trial court sentenced Appellant to four years on Count III, and suspended the *execution* of the four-year sentence and placed Appellant on probation for a period of three years. The written judgment and sentence of four years materially differs from the trial court's oral pronouncement on Count III of a suspended *imposition* of sentence and three years of probation.

The failure to accurately record the trial court's sentence as orally pronounced in open court is a clerical error. State v. Davis, 422 S.W.3d 458, 465 (Mo.App. E.D. 2014). Such an error may be corrected by a *nunc pro tunc* order if the trial court's intentions regarding the sentence are clear from the record. Id.

The record in this case reflects the trial court's pronouncement that the imposition of Appellant's sentence was suspended for Count III and Appellant was placed on three years' probation. There was no statement by the trial court indicating any intent to sentence Appellant to four years and suspend execution of that sentence.

Pursuant to Rule 29.12(c),[3] clerical mistakes in judgments "may be corrected by the court at any time after such notice, if any, as the court orders." Therefore, while we affirm Appellant's convictions and sentence in all other regards, we must remand the cause to the trial court with instructions to enter a written judgment reflecting the sentence as announced in open court. Point III is granted.

## Conclusion

The judgment of the trial court is affirmed in part and reversed and remanded in part, with instructions to the trial court to enter a *nunc pro tunc* order conforming the trial court's written sentence on Count III to its oral pronouncement of Appellant's sentence on Count III.

---

[3] All rule references are to Mo. R. Crim. P. 2015.

_____
SHERRI B. SULLIVAN, J.

Lisa S. Van Amburg, C.J., and
Kurt S. Odenwald, J., concur.

11