**STATE of Missouri, Respondent,**

v.

**Keenan ROBINSON, Appellant.**

**No. ED 104979**

Missouri Court of Appeals,
Eastern District,
DIVISION FIVE.

Filed: December 5, 2017

---

1. All rule references are to Mo. R. Crim. P. 2014, unless otherwise indicated.

Amy E. Lowe, 1010 Market Street, Suite 1100, St. Louis, MO 63101, for appellant.

Joshua D. Hawley, Atty. Gen., Robert J. (Jeff) Bartholomew, Asst. Atty. Gen. Jefferson City, MO 65102, P.O. Box 899, for respondent.

LAWRENCE E. MOONEY, JUDGE

A jury convicted Keenan Robinson of unlawfully using a weapon, in violation of Section 571.030.1(4), for exhibiting a firearm in an angry or threatening manner in the presence of Elizabeth Cooper.[1] Ms. Cooper invoked her Fifth Amendment privilege against self-incrimination and refused to testify at trial. In her absence, the trial court permitted the State to introduce a tape of Ms. Cooper's 911 call, as well as officers' testimony relating Ms. Cooper's statements made at the scene. The trial court admitted the evidence under the excited-utterance exception to the rule against hearsay evidence. On appeal, Mr. Robinson challenges the trial court's ruling. Because the trial court abused its discretion in admitting the hearsay evidence, we reverse Mr. Robinson's conviction. We remand the cause to the trial court.

### *Factual Background*

On April 19, 2015, Elizabeth Cooper placed a call to 911. She immediately noted that she had called the prior day about Mr. Robinson and then relayed that he had just brandished a revolver at her, as she was walking to the store. Let us closely consider the exact conversation between Ms. Cooper and the 911 dispatcher as revealed by the tape recording in the record on appeal:

D [Dispatcher]: 911 Sanchez

C [Ms. Cooper]: Um, yes, I'm Elizabeth Cooper, I called yesterday about Keenan Robinson. He just upped a gun on me with a red dot on it, as I was walking to the store.

D: Tell me where you're at.

C: I'm, uh, I'm uh, uh Miami and Compton. Now I told them yesterday that if they don't lock his ass up

everything goes cuz he just upped a gun on me ... [keeps talking, indiscernible]

D: (interrupts) Ok. Is he a white or a black male?

C: He's black. [keeps talking, indiscernible]

D: (interrupts) What's his name?

C: ... [indiscernible] And I'm not fucking ... [keeps talking, indiscernible]

D: (interrupts) What's his name?

C: Keenan Robinson.

D: Keenan Robinson?

C: Yes.

D: How old is he, ma'am?

C: 55.

D: 55. And what was he wearing?

C: He got on a white t-shirt, some like ... light blue, faded [indiscernible] jeans. He just upped his gun on me right here on Compton & Miami.

D: Ok. And you said it was a black gun with a red handle?

C: No, it's a silver gun. I want to say a .38, something like that, it's a revolver with a red dot on it.

D: Oh, it had a red dot on it.

C: Yeah, it had a red dot on it.

D: So like a laser. Alright, which way did he go?

C: He went back towards his house on Compton. I'm calling my people cuz I'm tired of this shit.

D: (interrupts) Which way is he walking, ma'am?

C: He's driving his truck.

D: What is he driving? What color & kind of car?

---

**1.** The jury also convicted Mr. Robinson of unlawfully possessing a firearm as a convict-ed felon, in violation of Section 571.070. Mr. Robinson does not contest that conviction.

C: Like a tan, um, Dodge Durango, the older model, not the newer truck, but it's a Dodge Durango.

D: Ok. And your name?

C: I'm Elizabeth Cooper.

D: Miss Cooper, we're going to send someone to you, ok?

C: Alright. I'm tired of this shit. I'm [indiscernible] to call my people. If they would have did what they were suppose to do yesterday he wouldn't have been able to up a gun on me today. But since they didn't do the fuck they told me yesterday and our [indiscernible] just got killed it's on now ok. . . .

D: (interrupts) Ok. Thank you. [End of call]

Two officers responded to Ms. Cooper's location. When they arrived, they ·found Ms. Cooper standing on the sidewalk. She was speaking very quickly and yelling. The officers described her as being angry and upset. Ms. Cooper told the officers that an "old trick" of hers pulled up in his vehicle while she was walking down the street, and that he exited the vehicle, pointed a gun at her, and yelled: "You think it's over. It ain't over." She identified the man as Mr. Robinson and provided his home address for the officers. She also provided a description of the clothes Mr. Robinson was wearing. Ms. Cooper described the gun as a silver revolver with a red dot, and told the officers that she knew the gun had been pointed at her because she could see the laser beam on her.

The officers proceeded to the address provided by Ms. Cooper and found a vehicle that matched the one described by Ms. Cooper. The hood of the vehicle was warm to the touch. Mr. Robinson was at home, and the officers arrested him for the al-leged brandishing. Mr. Robinson consent-ed to a search of his home. The officers found a revolver loaded with five rounds sitting on top of the furnace duct in the basement. The revolver matched the de-scription provided by Ms. Cooper. The offi-cers found a box of ammunition for a .357 Magnum revolver on a shelf in Mr. Robin-son's bedroom closet. The box of ammuni-tion was missing five rounds, and was the same brand of ammunition as that loaded in the revolver found in the basement.

Ms. Cooper invoked her Fifth Amend-ment privilege against self-incrimination and refused to testify at trial. In her ab-sence, the State introduced the tape of the 911 call, as well as the testimony of the investigating officers, who related state-ments made to them by Ms. Cooper at the scene. At the State's urging, the trial court ruled that the tape and the officers' testi-mony were admissible under the excited-utterance exception to the hearsay rule. The State presented no other witness to the brandishing event.

Mr. Robinson argues that Ms. Cooper's statements—both those included in the 911 tape and those made to the officers—did not constitute excited utterances because Ms. Cooper did not make the statements with the requisite mental state. He further contends the trial court erred in admitting the statements because Ms. Cooper's statements were the sole evidence of the alleged exciting event.[2]

### Standard of Review

■ We review the trial court's deci-sion to admit evidence for an abuse of discretion. *State v. Hosier*, 454 S.W.3d 883, 896 (Mo. banc 2015). The trial court has broad discretion to admit evidence at trial,

---

2. Mr. Robinson also contends the trial court erred in admitting the evidence because the evidence was testimonial in nature, and thus admission of the evidence violated his consti-tutional right to confront the witnesses against him. Because we reverse Mr. Robin-son's conviction on hearsay grounds, we do not reach this constitutional issue.

and we will not disturb the trial court's ruling absent a clear abuse of discretion. *State v. Kemp*, 212 S.W.3d 135, 145 (Mo. banc 2007). A trial court abuses its discretion in the admission of evidence when its ruling is clearly against the logic of the circumstances then before the trial court and the ruling is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.* Additionally, on direct appeal, we review for prejudice, not mere error. We will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *Id.* An error is prejudicial only if a reasonable probability exists that the trial court's error affected the outcome of the trial. *Id.* at 145-46. We conclude that the trial court erred in admitting Ms. Cooper's statements, and that the admission of her statements prejudiced Mr. Robinson.

### Discussion

■ Hearsay evidence is in-court testimony of an extrajudicial statement offered to prove the truth of the matters asserted therein, resting for its value upon the credibility of the out-of-court declarant. *Kemp*, 212 S.W.3d at 146. Ms. Cooper did not testify at trial, but the State introduced her statements about what happened through the 911 call and the testimony of the responding officers. The State used Ms. Cooper's out-of-court statements to prove the truth of the matter asserted: that Mr. Robinson had exhibited a gun in a threatening manner. These out-of-court statements are hearsay. On this, the parties agree.

■ As a general rule, hearsay evidence is both undesirable and inadmissible because the maker of the offered statement is neither under oath, nor subject to cross-examination, nor subject to the factfinder's ability to judge demeanor at the time the statement is made. *State v. Robinson*, 484 S.W.2d 186, 189 (Mo. 1972);

*State v. Mozee*, 112 S.W.3d 102, 107-08 (Mo. App. W.D. 2003); *State v. Howery*, 427 S.W.3d 236, 249 (Mo. App. E.D. 2014). However, such statements may be admissible if they fall within a recognized exception to the rule. *State v. Shoemaker*, 448 S.W.3d 853, 860 (Mo. App. W.D. 2014). Such exceptions are justified because their circumstances sufficiently guarantee the trustworthiness of the out-of-court statement. *Id.* (internal quotation omitted). Thus, to be admissible, Ms. Cooper's statements must fall under an exception to the general rule against hearsay evidence. The trial court admitted the statements under the excited-utterance exception.

■ The excited-utterance exception applies to statements made following a startling or unusual occurrence sufficient to overcome normal reflection, such that the ensuing declaration is a spontaneous reaction to the startling event. *State v. Turner*, 420 S.W.3d 666, 669 (Mo. App. E.D. 2014). "Courts have determined that excited utterances are inherently trustworthy because the startling nature of the event is speaking through the person instead of the person speaking about the event." *Kemp*, 212 S.W.3d at 146 (internal quotation omitted). "Because the statement is spontaneous and made under the influence of events, the statement is assumed trustworthy because it is unadorned by thoughtful reflection." *Id.* "The excited-utterance exception is based on the human experience, that under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock." *State v. Post*, 901 S.W.2d 231, 234 (Mo. App. E.D. 1995). "Since this utterance is made under the immediate

and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and then as expressing the real tenor of the speaker's belief as to the facts just observed by him, and may therefore be received as testimony to those facts." *Id.* (internal quotation omitted).

■■■■■ Courts consider several factors in determining whether an excited utterance exits: (1) the time between the startling event and the declaration; (2) whether the declaration is in response to a question; (3) whether the declaration is self-serving; and (4) the declarant's physical and mental condition at the time of the declaration, *Kemp*, 212 S.W.3d at 146. No one factor necessarily results in automatic exclusion. *Id.* Courts should consider all factors and circumstances in determining whether the declaration was the result of reflective thought. *Id.* The essential test for admissibility of an excited utterance is neither the time nor place of its utterance but whether it was made under such circumstances to indicate its trustworthiness. *Id.* "The utterance must be made under the immediate and uncontrolled dominion of the senses and during the time when consideration of self-interest could not have been brought to bear through reflection or premeditation." *Post*, 901 S.W.2d at 234. "Reflective thought is the antithesis of the excited utterance, which requires as its root, spontaneity." *Id.* at 235.

Now let us consider some instructive appellate decisions about excited utterances. First, in *Kemp*, the Court considered the admissibility of a statement from an out-of-court declarant who stated that her boyfriend had held her hostage at gunpoint all night. The Court found no abuse of discretion on the part of the trial court in admitting the statement as an excited utterance. The Court noted that shortly before making the disputed statement, the out-of-court declarant was observed running down the street, naked from her waist up and covered by only a nightgown from the waist down. She was breathing heavily, crying, and shaking. She was described as being frantic and emotionally distraught. When she made the statement she had not yet covered her partially-naked body, even though it was 8:30 on a Saturday morning and she was running down a neighborhood street. The court determined that no doubt existed that the statement could be taken as expressing the woman's true belief, because it was made under the immediate and uncontrolled domination of the senses as a result of the shock produced by the event. *Kemp*, 212 S.W.3d at 146-147.

The *Kemp* court also considered statements made by the same out-of-court declarant and captured on a 911 tape. The Court also concluded that these statements were admissible, because when made, the declarant was still under the immediate and uncontrolled domination of the senses because of the shock produced by the event. The Court noted that at the time she made the statements, the declarant was crying, bending over, and taking deep breaths. She looked frantic, very upset, and very emotional. And she was repeatedly saying "Oh God help me," or "Please help," or "Oh God." The declarant was breathing heavily enough to prompt the 911 operator to ask if she needed an ambulance. *Kemp*, 212 S.W.3d at 147.

In *Edwards*, the Court concluded that an out-of-court statement on a 911 call was admissible as an excited utterance where the caller was not calm, but rather was catching her breath and speaking with emotion. She did not immediately identify herself or her assailant, but asked for an

ambulance and police because she had been cut by a knife. The caller gave her name and that of the assailant only in response to the 911-operator's questions. *State v. Edwards*, 31 S.W.3d 73, 79 (Mo. App. W.D. 2000).

In *Burns*, the out-of-court declarant's statement to police was admissible under the excited-utterance exception when the declarant was still clearly under the influence of the stress and shock of assaults perpetrated on her by the defendant. She was extremely upset, sobbing uncontrollably, and relayed only the events that happened minutes before, causing her distress. *State v. Burns*, 478 S.W.3d 520, 525 (Mo. App. E.D. 2015).

Contrast *Bynote*, where the Court found out-of-court statements inadmissible as an excited utterance, in part, because the statements were about matters other than the alleged exciting event. *Bynote v. National Super Markets, Inc.*, 891 S.W.2d 117, 123 (Mo. banc 1995).

In *Turner*, the Court considered two different out-of-court statements by the same victim, relating that the defendant had beat her, set her on fire, and stolen from her. When she made the first statement, she had just escaped a burning house and was not wearing any clothes except her underpants. She had burns all over her body and was bleeding. She was hysterical, crying, and screaming. The Court concluded that this statement was admissible as an excited utterance, because the victim was under the immediate and uncontrolled domination of the senses as a result of the shock she had just experienced. *Turner*, 420 S.W.3d at 670.

However, the Court found the victim's later statement to a law-enforcement officer inadmissible. At the time the victim made this statement, she was lying on the sidewalk, in and out of consciousness. She was not hysterical, yelling, or crying. Instead, the victim "pretty much just said

what happened somewhat in a calm manner." The court was not persuaded that at the time the victim spoke with the officer that she was still under the immediate and uncontrolled domination of the senses. She was no longer hysterical or agitated. *Turner*, 420 S.W.3d at 671.

 Here, Ms. Cooper was not crying, she was not sobbing uncontrollably, she was not breathing heavily, she was not catching her breath, she was not frantic, she was not screaming, she was not hysterical, she was not emotionally distraught, and she was not pleading for help. Rather, when the call began, she was calm. She did not immediately request an ambulance, she did not request police, she did not immediately request help in any way, nor did she immediately speak of the brandishing that had just occurred. Rather, her first utterances were her name and the fact that she had called the day before about Mr. Robinson. Only after these statements did she tell of the brandishing. And once she did, her attention turned to her complaint that Mr. Robinson had not yet been arrested for some unspecified prior event. She answered the dispatcher's questions and relayed detailed information about Mr. Robinson in a clear, matter-of-fact manner, without hesitation. Ms. Cooper started the call in a calm manner, but became agitated and angered as the call went on. And when the officers arrived on the scene, they encountered an angry Ms. Cooper. But she was not upset about the brandishing; rather, she became irritated with the dispatcher's questions, and was upset with the police and the fact that they had not yet arrested Mr. Robinson. Ms. Cooper's loud and at times profane comments did not concern the brandishing event, but rather the fact that the police had not arrested Mr. Robinson. Indeed, Ms. Cooper was not intimidated or overwhelmed by the brandishing event at all. She did not hide in fear

or attempt to flee. Instead, she remained on the sidewalk, waiting for the police, and repeatedly stated that she was "tired of this shit" and that she was going to "call her people." This is not someone overwhelmed by something that had just occurred. To the extent Ms. Cooper was upset at the brandishing, it was because Mr. Robinson was out of jail in the first place, and thus able to approach her. We are not persuaded that at the time Ms. Cooper spoke with the dispatcher and the officers that she was under the immediate and uncontrolled domination of the senses. Thus, we cannot conclude that a possible startling event—the brandishing—was merely speaking through Ms. Cooper. To the contrary, Ms. Cooper was speaking her own mind in no uncertain terms.

Even if we entertained some doubt about this matter, we would still be obliged to reverse Mr. Robinson's conviction due to the improper use of hearsay evidence. No independent evidence of the startling event exists. The only evidence that Mr. Robinson brandished a gun at Ms. Cooper is Ms. Cooper's statements on the 911 tape and her statements to the officers. Some independent evidence of the startling event is necessary to admit out-of-court statements as excited utterances. *Post*, 901 S.W.2d at 235; *State v. Kemp*, 919 S.W.2d 278, 281 (Mo. App. W.D. 1996). This requirement exists because, absent this independent evidence, the reliability of an excited utterance is doubtful. "There is a considerable logical difficulty in allowing into evidence a statement admissible only because it arises from a startling event as proof also that the startling event occurred." *Post*, 901 S.W.2d at 234 (quoting Mueller and Kirkpatrick, Federal Evidence § 436 (2d Ed. 1994)). "The difficulty in using the statement to prove the event is the element of bootstrapping or circularity." *Id.* Tellingly, the State on appeal made no response to Mr. Robinson's argument that the State had failed to adduce independent evidence of the startling event. Though officers at Mr. Robinson's home found a warm truck and a gun matching the description provided by Ms. Cooper, this is not evidence of brandishing.

The trial court abused its discretion in admitting Ms. Cooper's statements. As noted earlier, on direct appeal, we will reverse only if the error was prejudicial. *Kemp*, 212 S.W.3d at 145. Here, the prejudice in admitting Ms. Cooper's statements is obvious because no other evidence existed that Mr. Robinson exhibited a gun.

### Conclusion

The statements are hearsay, but not excited utterances. And no independent evidence of the startling event exists. The trial court abused its discretion in admitting Ms. Cooper's statements, and the admission was prejudicial to Mr. Robinson. We thus reverse Mr. Robinson's conviction and sentence for unlawful use of a weapon. We affirm Mr. Robinson's uncontested conviction and sentence for unlawful possession of a firearm. We remand the case to the trial court for proceedings consistent with this opinion.

JAMES M. DOWD, C.J., and SHERRI B. SULLIVAN, J., concur.