STATE of Missouri, Respondent,

v.

Delbert Edwin WHITE,
Defendant-Appellant.

No. 51065.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Dec. 2, 1986.

Motion for Rehearing and/or Transfer
Denied Jan. 6, 1987.

Thomas Arthur Ludwig, Jackson, for defendant-appellant.

William L. Webster, Atty. Gen., Paul LaRose, Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Judge.

Defendant, Delbert White, appeals from a judgment entered on a guilty verdict which found him guilty of two counts of involuntary manslaughter and assessed punishment at seven years on each count. Defendant was sentenced accordingly with sentences to be served consecutively. We affirm.

The jury could reasonably have found the following. Randy Bennett, 18, of Zalma, Missouri left his home in a 1959 Datsun on the evening of March 9, 1985 and went to pick up his girl friend, Kellie Talley, 15, of Gypsy, Missouri. The couple then drove to Advance, Missouri to rent a movie video. After renting the video, the couple headed west on Highway C in order to return to the Bennett home. Approximately six miles west of Advance, the Datsun collided head-on with a Ford pickup truck driven by defendant. Randy Bennett was killed instantly and Kellie Talley suffered severe head injuries. She was taken from the scene by ambulance and died the next day in a Memphis hospital.

Several officers from both the Advance Police Department and the Missouri State Highway Patrol investigated the accident. When the police arrived at the scene they found defendant sitting beside the pickup truck which was upside down in the westbound lane. They observed both empty and full beer cans scattered about the truck as well as a beer cooler in the cab of the truck. Several officers, the ambulance attendant, and a passerby who had stopped at the scene testified they smelled alcohol on defendant's breath. Defendant suffered injuries to his chest and wrist and was taken by ambulance to a regional hospital where he was then interviewed by a State Highway Patrol trooper. Defendant consented to the taking of a blood sample which was later processed by the Southeast Missouri Crime Lab. The sample was shown to contain .141 percent by weight ethyl alcohol. (Section 577.037, RSMo Cum.Supp.1984,[1] allows a presumption of intoxication where there is .100 of one percent or more by weight of alcohol in the person's blood). Defendant was released from the hospital on March 14, 1985 and subsequently arrested for two counts of involuntary manslaughter, § 565.024 [2]

1. All further references to § 577.037 are RSMo Cum.Supp.1984.

2. Section 565.024.1, RSMo Cum.Supp.1984, provides that "[a] person commits the crime of involuntary manslaughter if he: ... (2) [w]hile in an intoxicated condition operates a motor vehicle in this state, and, when so operating, acts with criminal negligence to cause the death of any person...."

RSMo Cum.Supp.1984,[3] for the deaths of Randy Bennett and Kellie Talley.

Defendant makes the following contentions on appeal: 1) The trial court erred in unduly limiting voir dire examination on the issue of possible juror bias or prejudice if defendant chose not to testify; 2) The trial court erred in (A) denying defendant's motion for a directed verdict because no evidence was presented that defendant was driving on the wrong side of the road; and (B) allowing State Highway Patrol troopers to give "expert testimony;" 3) The trial court erred in failing to define "under the influence" when instructions were given to the jury; 4) the trial court erred in submitting Instruction No. 10 (verdict director for involuntary manslaughter) and overruling defendant's motions for acquittal because there was no evidence presented that defendant caused the death of Kellie Talley; and 5) The trial court erred in giving Instruction No. 5 (intoxication presumption) and allowing testimony regarding the intoxication presumption because § 577.037, which creates the presumption, does not apply to an involuntary manslaughter charge under § 565.024.

Defendant first contends the trial court improperly restricted his voir dire examination of the jury panel as to possible bias or prejudice against defendant should he choose not to testify.

During voir dire examination, counsel for the defense stated: "His Honor may instruct you that the defendant in a criminal case does not have to take the stand and testify." Counsel then asked: "If indeed [defendant] does not take the stand and testify would anyone be prejudiced by that or hold that against him?" The state made an objection which the trial court sustained. A bench conference followed and defense counsel was told he could ask the panel whether they would follow the law as given to them. The question was then asked as rephrased: "Does everyone here feel that they could follow His Honor's instructions, as His Honor may give them to you, on the subject of the defendant's testifying in this case?"

Defendant contends the latter question does no more than repeat the pattern instruction MAI–CR 2d 1.02 given to the panel by the court. The instruction asks: "Do you know of any reasons why you would be unable to follow the other instructions of the court?" Clearly, the question asked by defense counsel is not a repetition of the pattern instruction. The question asked by the court is nonspecific whereas the question asked by defense counsel put a specific issue, that of the defendant's testifying, before the jury panel for their consideration of possible bias.

Defendant further states in his brief: "[N]either during the reading of MAI–CR 1.02 nor at the time defendant's counsel was permitted to ask his limited question did the jury know what the instruction by the Court would be so that an intelligent response could be made." Defendant misconstrues the nature of voir dire examination. Although counsel is allowed a reasonable latitude in questioning the panel, there are limits to the scope of a proper examination. *State v. Beatty*, 617 S.W.2d 87, 92 (Mo.App.1981). Counsel may not tell prospective jurors what law will be applied in the case or what instructions will be given to them. *Id.* By stating what instructions the court may make, defense counsel attempted to inform the jury panel of the law applicable to the case and what instructions would be given and thus, the trial court properly sustained the state's objection.

Defendant's reliance on *State v. Brown*, 547 S.W.2d 797 (Mo. banc 1977) and *State v. McCormack*, 700 S.W.2d 520 (Mo.App. 1985), is also in error. In both *Brown* and *McCormack* defense counsel's entire question was disallowed and the defendants were precluded from any inquiry into their respective issues of self defense and witness credibility. Defendant in this case was required only to narrow the question so as to be in accord with existing case law.

3. All further references to § 565.024 are RSMo Cum.Supp.1984.

■ The nature and extent of voir dire examination is primarily a matter of trial court discretion and will not be disturbed on appeal absent a manifest abuse of discretion. *State v. Holland*, 653 S.W.2d 670, 678 (Mo. banc 1983). We find no such abuse of discretion here. The trial court allowed the issue to be placed before the jury panel and properly exercised its discretion as to the form of the question.

■ We also fail to perceive how the defendant was prejudiced by the actions of the trial court. "[T]he party asserting such a manifest abuse of discretion has the burden of demonstrating a real probability that he was thereby prejudiced." *State v. Norton*, 681 S.W.2d 497, 498 (Mo.App. 1984). Defendant has failed to show any prejudice as a result of the narrowed question. Defendant was allowed to put the issue before the panel and we accordingly perceive no prejudice. Point denied.

■ Defendant next contends there was not sufficient evidence to support a finding that defendant drove on the wrong side of the road.

> In determining the sufficiency of the evidence in a criminal case after the verdict of guilty, the Court accepts as true all evidence in the record tending to prove the defendant's guilt, whether such evidence is circumstantial in nature, together with favorable inferences that can be reasonably drawn therefrom and disregards all contrary evidence and inferences.

*State v. Morgan*, 592 S.W.2d 796, 805 (Mo. banc 1980).

Because there were no eyewitnesses, the primary testimony as to the cause of the accident came from the State Highway Patrol troopers. Accepting their testimony as true, it was established that after the accident, the Datsun was in a ditch north of the highway and defendant's truck was upside down in the westbound lane. There was extensive damage to the left front of both the Datsun and the truck. There was a gouge mark that began at the northern edge of the westbound lane and continued in a northwesterly direction. It was shown that the gouge mark was made by the left front wheel of the Datsun.

Given the location of the vehicles and the gouge mark, it is reasonable to infer that the collision occurred in the westbound lane and that the defendant was driving on the wrong side of the road. Point denied.

Defendant next contends the trial court erred in allowing State Highway Patrol Troopers Keathley and McElrath to testify as experts. Their testimony included: 1) location of the vehicles; 2) location and length of various gouge, scuff, and scrape marks; 3) opinion as to what caused the marks; 4) the condition of each vehicle; 5) opinion as to the direction of force exerted upon the Datsun; and 6) observation and opinion regarding the light assemblies. It was testified that if the bulb in the lighting assembly is illuminated at the time of impact, it can become distorted. From this, Trooper McElrath gave opinion testimony as to which of the bulbs in the Datsun were not lit when the collision occurred, most notably, the left turn signal.

It is within the trial court's discretion whether to accept or reject expert testimony. *Ponciroli v. Wyrick*, 573 S.W.2d 731, 735 (Mo.App.1978). Admission of expert testimony by the trial court will not be disturbed on appeal unless there is a clear abuse of discretion. *Rose v. Fague-Prouhet*, 701 S.W.2d 509, 511 (Mo.App.1985). An expert witness may express an opinion when qualified as such if the subject matter of the opinion is not of common knowledge such that an expert's opinion would be helpful to the jury in the determination of the issues before it. *McKinley v. Vize*, 563 S.W.2d 505, 508 (Mo.App.1978).

■ We find the trial court did not abuse its discretion in allowing the testimony of Troopers Keathley and McElrath. It is not beyond the trial court's discretion to conclude that an average juror is not sufficiently familiar with the intricacies of an automobile lighting assembly or that an average juror is unaware of the significance of certain gouge, scuff, and scrape marks made at the scene of the accident.

The cases relied upon by defendant prohibit the introduction of evidence as to point of impact. *Housman v. Fiddyment*, 421 S.W.2d 284 (Mo. banc 1967); *Holtmeyer v. Scherer*, 546 S.W.2d 29 (Mo.App. 1976). At the pre-trial conference the trial court properly sustained defendant's motion to exclude point of impact testimony and none was given at trial. The testimony elicited here did not invade the point of impact province of the jury. Point denied.

■ Defendant next contends the trial court erred in failing to define "under the influence of alcohol" when instructions were given to the jury.

Instructions No. 9 and 10 were modeled after MAI–CR 2d 13.12, the pattern instruction for involuntary manslaughter, driving while intoxicated. The Notes on Use following the pattern instruction call for the definition of "operating" if requested but makes no provision for a definition of "under the influence." The Notes on Use also refer the reader to MAI–CR 2d 33.00, wherein it states:

> Unless the Notes on Use expressly require or permit the definition of a term, word or phrase, it must not be defined even if requested by counsel or the jury. *State v. Abrams*, 537 S.W.2d 408 (Mo. banc 1976).

> In short, the Notes on Use under the MAI–CR forms approved or reapproved after May 1, 1978 give complete and exclusive directions as to all terms, words or phrases which either must or may be defined.

Defendant contends, however, that "under the influence" does not have a generally accepted meaning and thus, the instruction is insufficient. The Missouri Supreme Court, in *Abrams* stated:

> One of the purposes of formulating pattern instructions was to discontinue the use of archaic language and the use of words which might not be readily understood by ordinary lay citizens who sit on juries throughout this state. Words and phrases were selected for use which have a readily understandable meaning. *Abrams, supra,* at 410.

Furthermore, "[t]his court has no authority to hold that the instructions adopted by the Supreme Court or the Notes on Use accompanying them are erroneous." *State v. Tate*, 637 S.W.2d 67, 74 (Mo.App.1982).

It would defeat the purpose of the pattern instructions to permit definitions not called for by the Notes on Use. *State v. Francis*, 674 S.W.2d 49, 50 (Mo.App.1984). "This court will not find error where the trial judge follows the mandates of the MAI." *State v. Randolph*, 698 S.W.2d 535, 542 (Mo.App.1985).

Because the trial judge submitted the pattern instruction in accordance with the Notes on Use, we find defendant's contention to be without merit. Point denied.

■ Defendant, in his fourth point, again challenges the sufficiency of the evidence and contends the trial court erred in submitting Instruction No. 10 (involuntary manslaughter instruction as to the death of Kellie Talley) and overruling defendant's various motions for acquittal in that the only evidence of Kellie Talley's death was a death certificate from Tennessee. Defendant claims the state should have presented evidence of the injuries, the progress of those injuries, and the cause of death.

"[T]he State's case upon each count is wholly and entirely circumstantial. Nevertheless, all evidence upon the whole record tending to support the guilty verdicts must be taken as true, contrary evidence must be disregarded and every reasonable inference tending to support the verdicts must be indulged." *State v. Applegate*, 668 S.W.2d 624, 627 (Mo.App.1984).

The state presented evidence that Kellie Talley was in the Datsun when it collided with the defendant's truck, that she was injured and struggling inside the car, that she was removed from the scene by ambulance, and that she died the next day in a Memphis hospital. The Tennessee death certificate presented by the state showed she died of cardiopulmonary arrest as a

result of severe head injuries received in a two car accident the previous day.

The circumstantial evidence presented by the state supports a reasonable inference that Kellie Talley died of injuries received when the Datsun collided with the defendant's pickup truck. Defendant's contention, therefore, is without merit. Point denied.

■ Defendant contends in his final point the court erred in giving Instruction No. 5[4] and allowing testimony regarding the intoxication presumption. He contends the presumption contained in § 577.037 does not apply to an involuntary manslaughter charge under § 565.024.

Section 577.037 states:

1. Upon the trial of any person for violation of any of the provisions of section 577.005, 577.008, 577.010, or 577.012, *or upon the trial of any criminal action* or violations of county or municipal ordinances arising out of acts alleged to have been committed by any person while driving a motor vehicle while in an intoxicated condition, the amount of alcohol in the person's blood, breath, saliva or urine is admissible in evidence .... If there was ten-hundredths of one percent or more by weight of alcohol in the person's blood, this shall be prima facie evidence that the person was intoxicated at the time the specimen was taken (emphasis added).

Prior to July 1, 1984, the offense of causing the death of a person while driving in an intoxicated state was referred to as vehicular manslaughter and contained in § 577.005, RSMo 1978. The offense was then removed from Chapter 577 and included with the involuntary manslaughter offenses in Chapter 565. Defendant contends the intoxication presumption no longer applies because the offense is no longer in Chapter 577.

Defendant claims § 577.037 distinguishes between two classes of prosecution: 1) chapter 577 violations; and 2) county or municipal ordinance violations. He also claims these two classes encompass all laws of the state and its subdivisions as to intoxication related driving offenses. This is clearly in error. "The primary rule of statutory construction is to ascertain the intent of the lawmakers from the language used to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *Eminence R–1 School Dist. v. Hodge,* 635 S.W.2d 10, 13 (Mo.1982). "[T]he legislative intent insofar as possible, is to be determined from the language of the statute itself—further that *each portion* of the statute must be given meaning...." *State v. Sweeney,* 701 S.W.2d 420, 423 (Mo. banc 1985) (emphasis added).

Defendant ignores the phrase "or upon the trial of any criminal action" contained in § 577.037. This language creates a third class of prosecution: those criminal intoxication related driving offenses not contained in Chapter 577. Involuntary manslaughter, as defined in § 565.024.1(2), obviously falls within the language of "any criminal action." A plain reading of § 577.037 therefore, leads to the conclusion that the intoxication presumption contained in § 577.037 applies to an involuntary manslaughter charge under § 565.024.1(2).

Also, there were no substantive changes made when the offense was transferred to another chapter. "The successor enactment merely reunites the offense with the other species of involuntary manslaughter and restates the substantive elements of vehicular manslaughter as defined in the predecessor statute." *State v. Kliegel,* 674 S.W.2d 64, 66 (Mo.App.1984). There is no indication the legislature intended to remove the intoxication presumption from the subsequent involuntary manslaughter offense. Defendant's contention is without merit. Point denied.

Judgment affirmed.

SMITH, P.J., and REINHARD, J., concur.

4. Instruction No. 5 provides for a presumption of intoxication as set out in § 577.037.