**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Robert Lee HOLT,
Defendant–Appellant.**

**No. 53259.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 20, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 19, 1988.

Susan L. Hogan, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

STEPHAN, Presiding Judge.

Defendant was convicted by a jury of one count of first degree murder in violation of § 565.020, RSMo 1986, and one count of armed criminal action in violation of § 571.015, RSMo 1986. The court sentenced defendant to consecutive terms of life imprisonment without eligibility for probation or parole for the murder and one hundred years imprisonment for the armed criminal action. We affirm.

At the outset, we note that on July 25, 1988, defendant's attorney filed a notice in this court that on July 1, 1988, defendant filed a motion seeking relief under Rule 29.15 with the sentencing court. Rule 29.-15(m) provides in part that it:

> shall apply to all proceedings wherein sentence is pronounced on or after January 1, 1988. If sentence is pronounced prior to January 1, 1988, and no prior motion has been filed pursuant to Rule 27.26, a motion under this Rule 29.15 may be filed on or before June 30, 1988. Failure to file a motion on or before June 30, 1988, shall constitute a complete waiver of the right to proceed under this Rule 29.15.

Sentence in this case was pronounced on May 20, 1987. No prior motion under Rule 27.26 having been filed, defendant's failure to file his Rule 29.15 motion on or before June 30, 1988, causes that motion to be untimely and deprives him of any right to proceed under Rule 29.15. Accordingly, we do not suspend action on this appeal pending disposition of the motion as

provided by Rule 29.15(*l*), but proceed to final disposition.

On June 7, 1986, defendant and various other people including Terry Reed were gathered on Kingsway Drive, or "Bad Street", in Cape Girardeau, Missouri. "Bad Street" is an area of Cape Girardeau where young people congregate during the evenings to talk and drink. At 10:45 p.m., Reed approached defendant as defendant leaned against a car parked in a lot on "Bad Street". They spoke briefly and some witnesses saw Reed push defendant once or twice. Defendant said, "Don't _____ with me or I'll kill you," and produced a knife. Defendant held the knife in his hand for about a minute before Reed stepped back and said, "Go ahead, stab me, _____." or "Go ahead, kill me." Defendant stabbed Reed in the left side of the chest. Defendant appeared to some witnesses to pull the knife down or twist it as he removed it from Reed's chest. Reed began bleeding profusely and walked away.

Reed's brother, Scotty, who had been standing fifteen to thirty-five feet away, ran over, grabbed a tire iron and swung it at defendant, striking him in the arm. Scotty lost his balance and fell to the ground. Defendant swung the knife at Scotty without cutting him and ran off to a trailer park with Scotty in pursuit.

Meanwhile, Reed collapsed and was placed in a pickup truck. Scotty returned and got in the bed of the truck with his brother and their friend Michael Douglas. They took Reed to the emergency room at Southeast Hospital.

Hospital personnel tried, unsuccessfully, to stimulate a heartbeat. Dr. Doug McIntosh declared the victim dead at 11:38 p.m. The immediate cause of Reed's death was determined to have been a single stab wound penetrating the heart and resulting in massive loss of blood.

In his first point, defendant argues that the trial court erred in admitting certain photographs into evidence because any probative value such evidence may have had was outweighed by its prejudicial effect. Defendant contends that the photographs, depicting the victim's wounds, depicting the defendant in custody and depicting puddles of blood on the gravel parking lot, were cumulative of the testimony at trial, gruesome and unduly inflammatory.

The trial court is afforded broad discretion in determining the admissibility of demonstrative evidence. We will reverse only upon a showing of an abuse of that discretion. *State v. Clemons*, 643 S.W.2d 803, 805 (Mo. banc 1983).

▪ Defendant entered a plea of not guilty, therefore, the state had the burden of convincing the jury beyond a reasonable doubt as to each and every element of the charged offenses and should not be unduly limited in its manner of doing so. *Id; State v. Villanueva*, 598 S.W.2d 161, 162 (Mo.App.1980). The state had to show that defendant intentionally stabbed the victim in order to inflict injury. Even if a defendant offers to stipulate to the cause of death, the state has the right to offer and to have received evidence which is relevant and material. *State v. Holmes*, 609 S.W.2d 132, 135 (Mo. banc 1980). As the state must sustain its burden, it should not be unduly limited as to the manner of satisfying this quantum of proof. *State v. Villanueva*, at 162.

▪ Accurate portrayals will always be inflammatory and the photographs here were no more gruesome than any other photographs which show persons stabbed to death. To the extent that the photographs of the victim were gruesome, it is because the crime is one of that sort. *State v. Clemons*, 643 S.W.2d at 805. These photographs helped identify the nature of the wound, the scene of the stabbing, the identity of the defendant, and helped corroborate the state's position that this was a deliberate act.

In view of the superior vantage point occupied by the trial court for balancing the probative value and prejudicial effect of demonstrative evidence we find the trial court did not abuse its discretion in admitting the photographs into evidence. Accordingly, defendant's first point is denied.

In his second point defendant argues that the trial court erred in sustaining the

state's objection to Brian Hartis's testimony, on cross-examination, that he had "heard" Scotty Reed had a gun on the night Terry Reed was stabbed. Defendant claims that this testimony supported his theory of self-defense. He contends that the statement was admissible as evidence of the victim's reputation for a turbulent disposition. Defendant did not, however, make an offer of proof on this point at trial.

■ Hartis's statement is inadmissible hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *State v. Anding*, 689 S.W.2d 745, 752 (Mo.App.1985). It is not admissible under the exception to hearsay sought by defendant, that it shows evidence of Terry Reed's turbulent disposition, because whether Scotty Reed had a gun is irrelevant to the disposition of Terry Reed. *Cf. State v. Hafeli*, 715 S.W.2d 524, 530 (Mo.App.1986).

In fact, whether or not the statement is inadmissible hearsay, it was properly excluded because of lack of relevance. At the time of the stabbing, Scotty was standing fifteen to thirty-five feet away from Terry and was not involved in the altercation. Defendant's second point is denied.

In his third point, defendant claims that the trial court erred in overruling his motion in limine to exclude statements defendant made prior to the stabbing because they were not part of the *res gestae* of the charged offense. Defendant argues that the statements prejudiced him by improperly introducing his character into evidence.

The statements at issue are the following. Brad Andrews testified that on one of the two nights preceding the stabbing, he heard defendant say he wanted to get a knife and perform open heart surgery. Susie Smith testified that on the night of the stabbing defendant offered her the use of a knife so that she could fight another girl. Later that night she heard defendant say that he would not mind cutting someone's heart out and showing it to him before he died.

Also that night Rickie Smith heard defendant say while looking at a group of three people, including the victim, "If that _____ says one _____ word to me I'm going to cut his heart out." Mike Dougan heard defendant make a similar statement; and Mike Shelley heard defendant say, "If he messes with me I'll do open-heart surgery on him." Tim Keesee and Mike Davis heard defendant say, "Whoever comes down here and _____ with me I'm going to hurt 'em." Danny Youngermann was standing near defendant just before the stabbing and heard him say that if Terry Reed started any trouble with him he would cut his heart out. Immediately before the stabbing, Christopher Eldridge, Billy Brown and Scott York, respectively, heard defendant tell Terry Reed, "Don't _____ with me, I'll kill you"; "If you push me again, I'll kill you"; and "If you don't leave me alone I'll cut your _____ head off."

■ Defendant raised this issue in a motion in limine, which was denied. He failed to renew his objection to these statements at trial. Defendant has, therefore, failed to preserve this claim for review. In our discretion, we review this claim for plain error affecting substantial rights. Rule 29.12(b).

*Res gestae* refers to acts or events that "occur in the same transaction as the crime, are substantially contemporaneous with the commission of the crime, and are part of one continuous transaction in the accomplishment of a common design." *State v. Winston*, 657 S.W.2d 399, 401 (Mo. App.1983). The rule permitting *res gestae* holds that "acts, statements, occurrences and the circumstances forming part of the main transaction may be shown in evidence ... where they precede the offense immediately or by a short interval of time and tend, as background information, to elucidate a main fact in issue." *State v. Sherman*, 637 S.W.2d 704, 706 (Mo. banc 1982).

■ Whether a statement is *res gestae* is determined after considering all the circumstances. *State v. Scott*, 716 S.W.2d 413, 415 (Mo.App.1986). We find the statements are part of the *res gestae* of the crime. More importantly, they demon-

strate defendant's threatening behavior and negate his claim of self-defense by showing he had the requisite intent to commit murder. Evidence of intent is not equivalent to character evidence. Intent is a state of mind and it may be inferred from all the circumstances. *State v. Smith*, 686 S.W.2d 43, 47 (Mo.App.1985). Conduct, both before and after the commission of the crime, may be probative of intent. *State v. McCreary*, 504 S.W.2d 132, 135 (Mo.App.1973). We, therefore, find defendant's claim that the prosecutor improperly introduced character evidence to be without merit. Defendant's third point is denied.

In his fourth point, defendant alleges that the trial court erred in permitting the state on a second voir dire examination to read to the jury potential instructions and to state the law pertaining to the respective elements of first degree murder and involuntary manslaughter.

During voir dire, defense counsel said to the venire members:

I'd like to address this question to the panel as a whole. It's possible at the close of this case that if the evidence so supports and the Judge so finds, you will receive an instruction concerning involuntary manslaughter. And you will be instructed that if you do not find Robert Holt guilty of murder in the first degree or murder in the second degree that you are to consider the manslaughter instructions. The range of punishment for involuntary manslaughter is from one day to one year in the county jail or one year to seven years imprisonment in the Missouri Department of Corrections and/or a fine from one dollar to five thousand dollars. Is there any member of this panel who could not consider, if they so found Robert Holt guilty of involuntary manslaughter, who could not consider a one dollar fine, who would automatically reject that?

The state objected to this line of questioning on the ground that the instruction of involuntary manslaughter would not be supported by the evidence since there was no evidence of recklessness in the stabbing, and on the ground that defense counsel

should not have been allowed to single out the one dollar fine but only the range of punishment. The court agreed that defense counsel should not have isolated the one dollar fine; nor should he have brought up involuntary manslaughter. The court attempted to clear up the confusion by distinguishing murder from involuntary manslaughter. Defense counsel then asked the panel members if they could consider the full range of punishment. Eleven panel members, including Brenda Kutz and Ann Layton, indicated they would be unwilling to impose a fine for the stabbing. Defense counsel proceeded to other topics. At the end of defense counsel's voir dire, the prosecutor asked the court if he could conduct further voir dire in order to clarify the confusion created by defense counsel when he asked them about involuntary manslaughter and the range of punishment. The court allowed the prosecutor to conduct further voir dire, telling defense counsel that he had opened up a very difficult area.

■ We find that the trial court did not abuse its discretion. On the contrary, the court carefully limited the scope of both the defense counsel's and the prosecutor's voir dire. "The nature and extent of voir dire examination is primarily a matter of trial court discretion and will not be disturbed on appeal absent a manifest abuse of discretion." *State v. White*, 722 S.W.2d 92, 95 (Mo.App.1986); *State v. Holland*, 653 S.W.2d 670, 678 (Mo. banc 1983). When it became apparent that defense counsel had confused the issues for the panel members, the court correctly attempted to clarify matters and let the prosecutor attempt to do the same. The prosecutor never stated what the law was, but said, "the law would be·what the Judge gives you."

We fail to perceive how the defendant was prejudiced by the actions of the trial court. The party asserting such a manifest abuse of discretion has the burden of demonstrating that he was thereby prejudiced. *State v. Norton*, 681 S.W.2d 497, 498 (Mo. App.1984); *State v. White*, 722 S.W.2d at 95. Defendant failed to show that the

prosecutor's second voir dire prejudiced him, since the jury was given instructions concerning both murder and manslaughter. Point IV is denied.

In his fifth and final point, defendant alleges that the trial court erred in overruling his challenges for cause to venirepersons Ann Layton and Brenda Kutz. Defendant argues that Layton and Kutz gave answers on voir dire that indicated an inability to sit as fair and impartial jurors when they responded they would not be able to consider a full range of punishment if they were given involuntary manslaughter instructions. Upon additional voir dire examination by the state, however, both Layton and Kutz attested that they could consider the full range of punishment for involuntary manslaughter.

The trial judge is in a far better position to make a determination as to the qualifications of a potential juror than the appellate court, as his determination necessarily involves a judgment of the demeanor of the venireperson, as well as what the person says. *State v. Royal*, 610 S.W.2d 946, 950 (Mo. banc 1981). To show an abuse of discretion, it must clearly appear from the evidence that the challenged venireperson was prejudiced. *State v. Cheesebrew*, 575 S.W.2d 218, 221 (Mo.App.1978).

 In reviewing challenges for cause, the critical test appears to be whether the venireperson makes equivocal or unequivocal statements. The rule was stated clearly in *State v. Leipus*, 675 S.W.2d 896, 899 (Mo.App.1984):

> When a prospective juror ultimately states unequivocally that he can be impartial, and when the entirety of the voir dire makes it reasonable for the court to believe the potential juror, the court's exercise of discretion on a motion to strike for cause should not be disturbed on appeal.... However, the rule has no application where the answers of the prospective juror are equivocal and disclose uncertainty about his ability to be impartial. (Citation omitted.)

 On the state's second voir dire, both Layton and Kutz stated affirmatively and unequivocally that they were able to consider the full range of punishment.[1] Despite the fact that they initially made an equivocal statement, they were both rehabilitated and were competent to sit on the jury. The trial court, therefore, did not abuse its discretion in refusing to strike Layton and Kutz for cause. Defendant's fifth point is denied.

The judgment of the trial court is affirmed.

PUDLOWSKI, C.J., and DOWD, J., concur.

---

1. We also note that venireman Gary Abernathy was rehabilitated on this question during the second voir dire, but no objection was made to the failure to strike him for cause.